IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| ALABAYKAN HOLDING COMPANY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> TOBIN & COMPANY SECURITIES LLC AND JUSTINE EIDT TOBIN, <br><br> Defendants. | CIV. NO.: 21-1502 (SCC) |

**OPINION AND ORDER**

Defendants Tobin & Company Securities LLC ("TCS") and Justine Eidt Tobin's ("Tobin") have moved the Court to issue a preliminary injunction. *See* Docket No. 17.[1] For the reasons set forth below, this request is DENIED.

**I. Background**

On July 30, 2021, Plaintiff Alabaykan Holding Company,

---

[1] Defendants' motion at Docket No. 17 also included a request for a temporary restraining order ("TRO"). This Court denied the request for a TRO but scheduled a hearing to entertain their request for a preliminary injunction. *See* Docket No. 20.

| | |
|---|---:|
| ALABAYKAN HOLDING COMPANY, LTD. v.<br>TOBIN & COMPANY SECURITIES, LLC, ET AL. | Page 2 |

Ltd. ("Plaintiff AHC") filed a Statement of Claim ("SOC") against Defendants to commence arbitration proceedings before the Financial Industry Regulatory Authority ("FINRA"). *See* Docket Nos. 17-5, 23-1 and 23-2. In its SOC, Plaintiff AHC advanced claims against Defendants, anchored to Defendants' purported failure to supervise David Gunderson ("Mr. Gunderson"), Stanley Bradshaw ("Mr. Bradshaw"), and Michael Petrucelli ("Mr. Petrucelli") (collectively, the "EB-5 Principals"). Docket Nos. 17-5 and 23-1.

On October 18, 2021, Plaintiff filed a complaint before this Court seeking a declaratory judgment ("Plaintiff's Complaint") to assert what it believes is its right to arbitrate its claims against Defendants before FINRA. Docket No. 1.[2] On that same day, Defendants filed a complaint of their own before the U.S. District Court for the Northern District of Texas ("Texas

---

[2] Plaintiff AHC informed the FINRA Director that despite having filed its complaint before this Court, it intends to move forward with the FINRA arbitration. Docket No. 23-4.

| | |
|---|---|
| ALABAYKAN HOLDING COMPANY, LTD. v. TOBIN & COMPANY SECURITIES, LLC, ET AL. | Page 3 |

Court"). Docket No. 23-5. There, Defendants moved the Texas Court to grant them declaratory relief, a temporary restraining order ("TRO") and preliminary and permanent injunctive relief to enjoin the FINRA arbitration. *Id.* Defendants also filed what they identified as their "Brief in Support of Motion for a Temporary Restraining Order, Preliminary Injunction and Order Authorizing Alternative Service." Docket No. 23-6. Upon a referral from the Chief Judge of the Texas Court, a District Judge entertained Defendants' request for a TRO and denied it on the ground that Defendants had failed to identify their purported irreparable harm.[3] Docket No. 17-12 and 23-7.

October 18, 2021 was an eventful day, for also on that day Defendants moved the FINRA Director to stay the arbitration proceedings until the parallel declaratory actions pending

---

[3] It is the Court's understanding, based on the Parties' representations and the documents submitted in the instant action, that the Texas Court has not yet issued its decision regarding the request for declaratory relief or the preliminary injunction. Currently, there is a Motion to Transfer that is pending before the Texas Court. Docket No. 17-11.

| ALABAYKAN HOLDING COMPANY, LTD. v. TOBIN & COMPANY SECURITIES, LLC, ET AL. | Page 4 |
|---|---|

before this Court and the Texas Court were resolved. Docket No. 23-8. On November 8, 2021, the FINRA Director summarily declined to stay the FINRA proceedings. Docket Nos. 17-7 and 23-10.

Following the FINRA Director's refusal to stay the arbitration proceedings, on November 17, 2021, Defendants filed a motion before this Court repeating its request for a TRO and preliminary injunction to enjoin the FINRA arbitration until Plaintiff's case before this Court is heard on the merits. Docket No. 17. The Court denied the TRO but scheduled a preliminary injunction hearing (the "Hearing"). Docket No. 20.[4] After the Court scheduled the Hearing, Plaintiff AHC filed its opposition to Defendants' request for a preliminary injunction.

---

[4] As the Preliminary Injunction Hearing (the "Hearing") progressed, the Court suggested the consolidation of the hearing with the trial on the merits, an action permitted under Federal Rule of Civil Procedure 65(a)(2), given that the Parties continued to focus on the merits of the case. The Parties did not meaningfully entertain the Court's suggestion for they continued with their substantive arguments regarding the merits of the case. In view of the Parties' silence regarding the Court's suggestion, the Court continued with the Hearing and did not consolidate the proceedings.

| ALABAYKAN HOLDING COMPANY, LTD. v. TOBIN & COMPANY SECURITIES, LLC, ET AL. | Page 5 |
|---|---|

Docket No. 23. The Hearing took place on November 24, 2021. Docket No. 25. Having summarized the procedural travel of this case, we turn to the matter at hand: Defendants' request for a preliminary injunction.

## II. Findings of Fact[5]

In accordance with Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact:[6]

---

[5] The Court finds it necessary to mention that these findings of fact were made based on a scant record even though the Court afforded the Parties the opportunity to sit witnesses. *See* Docket No. 24. Moreover, throughout the Hearing, the Court inquired whether the exhibits that they sent to our Courtroom Deputy prior to the Hearing, *see* Docket No. 24, and which happen to be the same that were attached to their respective motions at Docket Nos. 17 and 23, were the sole pieces of evidence that they were relying on. The Parties replied that they would not be entering any additional evidence for the Court to consider in order to issue its ruling regarding the pending matter. *See* Docket No. 25.

[6] These findings of fact are limited to answering the question at hand: whether a preliminary injunction should be granted or denied at this juncture. *See Francisco Sánchez v. Esso Standard Oil Co.*, 572 F.3d 1, 15 (1st Cir. 2009) (explaining that "it is inappropriate for the [district court], at or after a preliminary injunction hearing, to 'make findings of fact or conclusions of law that may go beyond what is necessary to decide whether a preliminary injunction should be issued.'" (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2950)). And just as the conclusions of law that are included in this Opinion and Order, the Court

| ALABAYKAN HOLDING COMPANY, LTD. v. | Page 6 |
| TOBIN & COMPANY SECURITIES, LLC, ET AL. | |

1. TCS is a limited liability company that was formed in North Carolina, on May 12, 2005, provides broker-dealer services, has been a member of FINRA since March 28, 2006, and is also registered with the U.S. Securities Exchange Commission. Docket No. 17-9 at pgs. 4, 9.

2. Since May 2006, Tobin has served as TCS's Chief Compliance Officer. Docket No. 17-9 at pg. 6.

3. The EB-5 Principals controlled an EB-5 Regional Investment Center in Dallas, Texas. Docket No. 1-1 at ¶ 10.

4. On or around 2013, the EB-5 Principals decided that they would focus their EB-5 investment efforts in health care real estate projects. Docket No. 1-1 at ¶ 10.

5. At that time, the EB-5 Principals began looking into broker-dealers to serve as a placement agent for their EB-5 investment efforts in the health care real estate industry that would be sponsored by their EB-5 Regional

---

is not bound by these findings of fact because they may change once a full hearing on the merits of the case takes place. *Id.*

| ALABAYKAN HOLDING COMPANY, LTD. v.<br>TOBIN & COMPANY SECURITIES, LLC, ET AL. | Page 7 |
|---|---|

Investment Center. Docket No. 1-1 at ¶ 11.

6. In late 2013, the EB-5 Principals got in touch with Tobin in order to become registrants of TCS. Docket No. 1-1 at ¶ 11.

7. For a time, the EB-5 Principals were registered with TCS. Docket No. 17-3 at ¶ 5.

8. Mr. Gunderson was registered with TCS from January 2014 until December 2019. Docket Nos. 17-3 at ¶ 5 and 17-6 at pg. 8.

9. Defendants became the EB-5 Principals' placement agent for their EB-5 securities business. Docket No. 23-9 at pg. 3.

10. As registrants of TCS, the EB-5 Principals were supervised by Tobin. Docket No. 1-1 at ¶ 12.

11. During the time that the EB-5 Principles were registered with TCS, the EB-5 Regional Center served as a satellite office for TCS's headquarters. *Id.*

12. In view of their supervisory role regarding the EB-5 Regional Center, Defendants had to, *inter alia*, "(a)

ALABAYKAN HOLDING COMPANY, LTD. v.  
TOBIN & COMPANY SECURITIES, LLC, ET AL.

Page 8

review and maintain [the EB-5 Regional Office's] written communications and other business records, (b) review and approve sales and marketing materials it used, (c) undertake supervision of investment related undertakings and other efforts of the [EB-5 Principals] to undertake securities offerings in an assisted living care complex in Dallas through written communications and marketing materials[.]" Docket No. 1-1 at ¶ 13.

13. Regarding the private placement offerings, TCS, *inter alia*, "conducted issuer-level diligence, assisted with preparing investor questionnaires, provided resources for conducting investor-level diligence, performed a reasonable basis suitability analysis, and otherwise documented compliance with FINRA and SEC regulatory requirements." Docket No. 17-3 at ¶ 7.

14. The assisted living care complex in Dallas, Texas was the Adora Midtown Park ("Adora"). Docket No. 1-1 at ¶ 14.

15. Defendants conducted due diligence efforts as to Adora in order for the EB-5 Principals to market and sell it on a

ALABAYKAN HOLDING COMPANY, LTD. v.  
TOBIN & COMPANY SECURITIES, LLC, ET AL.

Page 9

commission basis while under Defendants' supervision. Docket No. 1-1 at ¶ 14.

16. Plaintiff AHC is a British Virgin Islands limited liability company. Docket No. 1-1 at ¶ 1.

17. Plaintiff AHC handles wealth and investment related matters for its owners in the Middle East and internationally. *Id.*

18. By way of an EB-5 investor, at some point in 2016, Mr. Gunderson and Mr. Bradshaw approached Plaintiff ACH to enter into a loan of $1 million for Adora. Docket No. 1-1 at ¶ 15.

19. The EB-5 Principals made representations to Plaintiff ACH to the effect that Adora was a good investment opportunity. Docket No. 1-1 at ¶ 17.

20. On January 1, 2017, Plaintiff ACH executed a loan agreement (the "Loan") for $1 million for Adora, at a rate of 18% *per annum*. Docket Nos. 1-1 at ¶ 18 and Docket No. 1-1, Exhibit 2.

21. The Loan was placed as an investment with an

| ALABAYKAN HOLDING COMPANY, LTD. v. | Page 10 |
| TOBIN & COMPANY SECURITIES, LLC, ET AL. | |

expectation of return. Docket No. 1-1 at ¶ 18.

22. Mr. Gunderson signed the Loan as Vice President of Adora 9, LLC. Docket No. 17-5, Exhibit 1.

23. The EB-5 Principals received fee revenues from the Loan. Docket No. 1-1 at ¶ 19.

24. The Loan was "sold away" from TCS. Docket No. 1-1 at ¶ 20.

25. Plaintiff ACH has not received any principal or interest regarding the Loan since January 1, 2017. Docket No. 1-1 at ¶ 21.

## III. Analysis

In order to render its determination regarding a request for a preliminary injunction, the Court must consider the following four factors: "(1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest." *Shurtleff v. City of Bos.*, 928 F.3d 166, 171 (1st Cir. 2020) (citing *Díaz-Carrasquillo v. García-Padilla*, 750 F.3d 7, 10 (1st Cir. 2014)). Here, Defendants, as the

movants, bear the burden of showing that these factors tip the scale in their favor. *Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006) (citing *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003)). And while all four factors are of great importance, the "likelihood of success on the merits" factor has been dubbed the *sine qua non* factor to be considered by the Court in its inquiry. *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). It follows that, "[i]f the movant fails to demonstrate a likelihood of success on the merits, the remaining elements are of little consequence." *Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 91 (1st Cir. 2020).

### A. Likelihood of Success on the Merits

The First Circuit has provided guidance in defining what a "likelihood of success on the merits" entails in the preliminary injunction context. Specifically, it has noted that the Court is only called upon "to make an estimation of likelihood of success and 'need not predict the eventual outcome on the merits with absolute assurance.'" *Corp. Techs., Inc. v. Harnett*,

731 F.3d 6, 10 (1st Cir. 2013) (quoting *Ross-Simons of Warwick, Inc., v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996)). At this stage, the Court's determinations regarding the "likelihood" factor are only intended to constitute "statements of probable outcomes." *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 6 (1st Cir. 1991).

The touchstone of the Court's inquiry is FINRA Rule 12200. That rule states that a dispute must be arbitrated under the FINRA Code if:

- Arbitration under the Code is either:

    (1) Required by a written agreement, or
    (2) Requested by a customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

| ALABAYKAN HOLDING COMPANY, LTD. v. TOBIN & COMPANY SECURITIES, LLC, ET AL. | Page 13 |
|---|---|

FINRA Code, Rule 12200.

The Parties have not pointed to any written agreement between them that calls for the instant dispute to be arbitrated before FINRA. Therefore, because no written agreement to arbitrate exists between Plaintiff ACH and Defendants, under Rule 12200, arbitration would proceed if it was requested by a "customer." And here, Defendants argue that Plaintiff ACH is not a "customer" under Rule 12200. Docket No. 17-1 at pgs. 15-17. Therefore, to show a likelihood of success on the merits, Defendants were first tasked with showing that Plaintiff ACH was not a "customer" pursuant to FINRA Rule 12200.

The FINRA Rules do not shed conclusive light as to who can be categorized as a "customer" under Rule 12200. Instead, FINRA Rule 12100(k) merely states that "[a] customer shall not include a broker or a dealer." Moreover, the First Circuit has yet to reach this issue. But the Second Circuit, where a considerable amount of FINRA matters have been litigated, offers the following definition: "[t]he term 'customer' includes at least a non-broker or non-dealer who purchases or

| ALABAYKAN HOLDING COMPANY, LTD. v. TOBIN & COMPANY SECURITIES, LLC, ET AL. | Page 14 |
|---|---|

undertakes to purchase a good or service from a FINRA member." *UBS Fin. Servs., Inc., v. W. Va. Univ.*, 660 F.3d 643, 650 (2d Cir. 2011). This definition has been interpreted to also cover the "associated persons" of the FINRA member. *Citigroup Glob. Mkts. Inc. v. Abbar*, 761 F.3d 268, 274 (2d Cir. 2014) (noting that Rule 12200 "requires a FINRA member to arbitrate disputes with its 'customers,' or the 'customers' of its 'associated persons.'"). When discussing the definition of a "customer" under Rule 12200, *Abbar* also mentioned that, "[b]y agreeing to accept 'a fee for its services' . . . a FINRA member understands that it may be compelled to arbitrate if a dispute arises with [a customer]." *Id.* at 275. Although discussing a FINRA member and customer relationship, the case implies that the same reasoning can be applied to an associated person and customer relationship.

Here, Defendants argue that Plaintiff AHC did not purchase any goods or services from either Defendants or the EB-5 Principals. Docket No. 17-1 at pg. 16. However, Defendants have not proffered evidence that would negate that the Loan

was considered an investment with an expectation of a return and that the EB-5 Principals received fee revenues from the Loan. As such, at this juncture, Defendants have not met their burden to show the likelihood that they would prevail in showing that Plaintiff AHC was not a customer of TCS's associated persons, the EB-5 Principals.

Defendants also maintain that there is no evidence in the record that would show that Plaintiff ACH dealt with the EB-5 Principals "in their capacity as associated persons of Tobin," *id.* at pgs. 11-12, and according to them, "[t]he mere fact that the [EB-5 Principles] were associated persons of Tobin at the time of the Loan is insufficient to compel Tobin to arbitrate under the FINRA Code," *id.* at pg. 12. Defendants' argument drives at Rule 12200's second prong, whether "[t]he dispute is between a customer and a member." But here, Defendants have acknowledged that the EB-5 Principles were associated persons of TCS, and it holds that when dealings occur with a "member's agent or representative" such dealings are viewed as having also occurred with the member. *Multi-Financial Securities Corp.*

| ALABAYKAN HOLDING COMPANY, LTD. v. | Page 16 |
|---|---|
| TOBIN & COMPANY SECURITIES, LLC, ET AL. | |

*v. King,* 386 F.3d 1364, 1370 (11th Cir. 2004).[7] Furthermore, Plaintiff AHC dealt with at least one of the EB-5 Principals, Mr. Gunderson, in a matter that was tied to the reason why the EB-5 Principals sought to be registered with TCS.

Lastly, it appears that Defendants believe that Rule 12200's "dispute arises in connection with the business activities of the member or the associated person[,]" prong is not met. Docket No. 17-1 at pgs. 10-11 and 16-17. Defendants reason that if the associated persons business activities are not related to their association with the FINRA Member, TCS, then this final prong is not satisfied. The overarching argument advanced by Plaintiff AHC in its SOC pertains to Defendants' alleged failure to supervise the EB-5 Principles, who were TCS's associated persons, and whose actions took place in the context of carrying out investment activities for which they sought to be registered

---

[7] *Multi-Financial Securities Corp. v. King,* 386 F.3d 1364 (11th Cir. 2004) analyzed, *inter alia,* NASD Rule 10301, which preceded FINRA Rule 12200. As such, because NASD Rule 10301 and FINRA Rule 12200 mirror each other, we find *King* to be instructive to the matter at hand. *See e.g., Kashner Davison Secs. Corp. v. Mscisz,* 601 F.3d 19, 21 (1st Cir. 2010).

| | |
|---|---|
| ALABAYKAN HOLDING COMPANY, LTD. v.<br>TOBIN & COMPANY SECURITIES, LLC, ET AL. | Page 17 |

with TCS in the first place. A claim regarding a FINRA member's negligent supervision of an associated person can be construed as being a dispute that is tied to the business activities of a member. *King*, 386 F.3d at 1370. As such, at this stage, the Court does not find that Defendants have met their burden as to their likelihood of success on the merits.

### B. Likelihood of Irreparable Harm

Pursuant to First Circuit case law, irreparable harm in the preliminary injunction context occurs when the alleged injury cannot be "compensated for either by a later-issued permanent injunction . . . or by a later-issued damages remedy." *Río Grande Cmty. Health Ctr., Inc. v. Rullán*, 397 F.3d 56, 76 (1st Cir. 2005). Here, Defendants argue that they will suffer irreparable harm come December 2, 2021, for on that date they will have to answer Plaintiff AHC's SOC, sign a submission agreement to arbitrate before FINRA and rank and strike the arbitrators that will make up the FINRA panel that will oversee the arbitration. Docket No. 17-1 at pg. 18. The Court does not find that Defendants have met their burden as far as the irreparable

harm prong is concerned. For starters, the FINRA arbitration is still in its infancy. And because the Parties have made it crystal clear that they wish to quickly resolve Plaintiff's Complaint, the Court will ensure that this matter is handled in an expedited manner while at the same time allowing the Court to issue its decision based on a fully developed factual record. Accordingly, because Defendants have not satisfied their burden as to the first two pivotal factors in the preliminary injunction phase, the Court need not consider the remaining factors. *See González-Droz v. González-Colón,* 573 F.3d 75, 79 (1st Cir. 2009) (stating that "[t]he first two factors are the most important[.]"); *see also New Comm Wireless Servs., Inc.,* 287 F.3d at 9 (explaining that "if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.").

## IV. Conclusion

In light of the above, Defendants' request for a preliminary injunction is hereby **DENIED.** As highlighted, the Court's decision was based on a limited record. It could very well be

that "a party losing the battle on likelihood of success may nonetheless win the war at a succeeding trial on the merits." *Narragansett Indian Tribe*, 934 F.2d at 6.

A status and scheduling conference is set for **December 3, 2021 at 3:30pm (AST)** via VTC. The Parties shall come prepared to set dates for the pre-trial and trial.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of December 2021.

                    S/ SILVIA CARREÑO-COLL
                    UNITED STATES DISTRICT COURT JUDGE